THE METROPOLITAN STREET RAILROAD CO. *v.* POWELL.

1. The city court of Atlanta, being invested by statute with power over both civil and criminal business at its March and September terms, was not deprived of its jurisdiction over civil business at those terms by a subsequent statute withdrawing from it all criminal jurisdiction.  Such withdrawal did not operate by implication to abolish the March and September terms of the court. *Richmond & D. R. R.* v. *Allison*, this term.  89 *Ga.* 567.

2. A declaration for a tort will not be dismissed on motion at the trial term because of uncertainty in setting forth the date of the commission of the tort, or because some of the personal injuries complained of are not fully described.  Such defects are matter for special demurrer.  The court committed no material error in admitting evidence or in charging the jury.

3. The alleged misconduct of plaintiff's counsel, by disclosing in the hearing of the jury the contents of a paper that he sought to introduce in evidence, is not cause for ordering a new trial over the discretion of the presiding judge.

4. When the plaintiff or his counsel violates the conditions of a fair trial by stating facts to the jury not in evidence, or by other unfair and unwarrantable practice in the conduct of his cause, the court may declare a mistrial of its own motion or upon motion of the defendant, or the defendant may object to the impropriety and invoke such ruling thereon and such instructions to the jury as may prevent as far as possible any mischief to the cause of

justice. But. if no objection is made and no instruction to the jury is invoked, the defendant may be treated as acquiescing, and a new trial for such misconduct may be denied.

5. As the court and the senior counsel for the defendant had the same understanding touching a disputed question as to whether certain evidence for the plaintiff was ruled in or ruled out, it is not cause for a new trial that the junior counsel for the defendant had a different understanding with which the stenographer's notes agree, even if the court misunderstood the answer of the witness at the time the ruling was made and ruled the question under a misapprehension of fact.

6. The party on whom the burden of proof rests is entitled to the aid of all legal presumptions arising out of the facts established, and if these presumptions, added to the established facts, make a *prima facie* case, the burden is shifted to the other party.

7. If the plaintiff herself was free from negligence and her injury was due to the concurrent negligence of the railroad company and the person with whom she was riding in a wagon, he not being her servant and it not appearing that she was the owner of the horse or wagon or that she had any agency or concern in procuring or in driving the same, and nothing appearing which tends to show that she was aware of any incompetency in the driver, the company is liable to her for all the damages consequent upon the injury, and can take no credit as to any part thereof on account of the contributory negligence of the driver of the wagon.

8. The evidence, though conflicting, warranted the verdict, and the damages found, though apparently extreme, are not so excessive as to warrant this court in directing a new trial over the approval of the presiding judge.　　　　　　　　*Judgment affirmed.*

May 18, 1892. By two Justices.

Jurisdiction. Practice. Demurrer. Conduct of trial. *Onus.* Negligence. Damages. Street railroads. Before Judge VAN EPPS. City court of Atlanta. September term, 1891.

Mrs. Powell sued for damages, and obtained a verdict. The defendant moved to reinstate the case (which was tried on October 10, 1891, during the September term), alleging that the apparent verdict and judgment were void, because the June term, 1891, of the city court of Atlanta, was duly and finally adjourned on July 18, and the September criminal term was abolished by the act of August 7, creating the criminal court of Atlanta; hence there could be no legal term of the city court until the

December term, 1891. The motion was overruled, the court holding that the act of 1891 did no more than strip the city court of its criminal jurisdiction, and did not interfere with the March and September terms as to business other than criminal matters, citing the act of December 24, 1884, conferring jurisdiction on the city court to try civil cases at the March and September terms, etc.

The plaintiff's declaration was filed on June 19, 1890. She alleged: On June 14th "inst.," she, in company with several others, was riding in a wagon, driving a horse usually safe and accustomed to be driven without fright by and near dummy street engines. As they were passing along Georgia avenue in the city of Atlanta, where there is much travel, one of defendant's dummy engines, drawing passenger-cars, was seen approaching about one hundred yards distant, meeting the wagon and occupants. The horse took fright at the dummy, contrary to custom, and without running pulled the wagon on and near defendant's track, and, though the driver used the greatest precaution and diligence, became uncontrollable and continued to pull on and near the track. The engine, in full view of plaintiff and her companions in the wagon, came rapidly on, heedless of their perilous situation on the track. The engineer, fireman and conductor were seen not to be on the lookout ahead, and plaintiff and her companion screamed aloud to them, hoping to attract their attention, that they might stop the train without running into the wagon; but the engine and cars came on with unbated speed, and plaintiff, despairing of having the defendant's servants in charge of the train see the danger and stop the train, sprang from the wagon, but before she struck the ground the engine rushed into the wagon breaking it to pieces. She was caught between the engine and wagon, barely escaping with her life, and re-

ceived the injuries hereinafter related. The engine was running without control at the rate of about eighteen or twenty miles per hour, much faster than is allowed under the city ordinances. Plaintiff and her companions were wholly without fault, and the injuries were caused solely by the gross carelessness of defendant. Defendant was grossly negligent in failing to keep a lookout ahead, and in running the train at the reckless and unsafe rate of speed mentioned. By said collision both bones of her left leg below the knee were broken, and one of the broken bones protruded through the flesh and remained exposed until reset by a surgeon. She also received wounds and bruises on her left side and thigh, and her left ankle was badly sprained. "She received painful and permanent internal injuries to her back, spine and intestines." Her injuries are permanent, have caused her great pain and bodily suffering, and will thus cause her to suffer throughout all her life. At the time of the reception of the injuries she was conducting a boarding-house in Atlanta. Her injuries have permanently debarred her from attending to her said business and duties, or any other kind of employment, to her great financial loss and damage. She has been compelled to incur large expenses for nursing, etc. Her age and expectancy of life are alleged. She claims $15,000 damages.

When the case came on for hearing defendant moved to dismiss it, because no date was alleged therein for the injury complained of, and no legal basis for damages as to loss of time. Defendant also moved to strike from the declaration, if it were not dismissed, the allegation that "she received painful and permanent internal injuries to her back, spine and intestines," because those words do not plainly, fully and distinctly set forth the cause of action as to those alleged injuries. These motions were overruled. The defendant moved also for a new trial, which was denied. The grounds of the motion are:

The court erred in allowing the plaintiff to testify to the condition of her leg at the time of the trial, viz. that it was crooked, bent, short, etc., over the objection that there was no allegation of any permanent injuries to her leg.

Error in allowing plaintiff to testify, over the same objection, "Any little distance that I walk, even two or three blocks, I can do nothing the next day," because her inability to walk was inadmissible under her allegations. The court ruled that such objections would have been good on special demurrer at the first term, but that it was sufficiently alleged in the declaration that the injuries had permanently impaired her ability, to let in the details.

For like reasons the defendant objected to the evidence of the number of rooms in plaintiff's boarding-house, the number of her boarders, etc. The court ruled that it was not competent for her to show how much she earned as profits in the business of keeping a boarding-house, but it was competent to show what her business was—that it was a boarding-house, and what her ability was to attend to that kind of business, how many boarders she had, what amount of strength, time and attention she devoted to it, and what ability she had to devote to it after she was hurt.

Error in allowing plaintiff to testify as to her ability to make dresses, or what she could do in that line now, compared with what she could do before the injury, especially in these words: "I could make three or four dresses before I was hurt—fine dresses—from $8 to $12 dresses." The objection was that her allegations did not authorize such proof.

Error in admitting the tables of expectancy of life and annuity tables, over the objection that no proper basis had been laid for them, there being, as defendant contended, no evidence showing any monetary measure of her capacity.

Pending the cross-examination of Bryan Turner, the fireman of defendant, by plaintiff's counsel, he showed the witness a piece of paper, on part of which was written these words: "Bryan Turner, fireman, says dummy running too fast, Eng. Wade Nichols, drinking man, could have stopped by reversing the engine in time, Bryan Turner." Plaintiff's counsel then examined him about the same as follows: "Q. Examine that signature and say whose it is. Who wrote that? what name is that? A. That is Bryan Turner. Q. Who wrote it? A. I wrote it. Q. You say you signed that paper? A. I signed it, but I did not write what was wrote there, only the signature." Plaintiff's counsel then asked the witness, "What is there?" Defendant's counsel objected because the paper showed for itself, and the objection was sustained. Counsel for plaintiff then continued to examine the witness as follows: "I am speaking with reference to those words which appear in that ink, in those ink lines, on the three lines there. State whether when you signed your name to that paper the writing in those three lines was there. (Witness examines paper.) A. No sir, all of it was not there. Q. What part of it was there? A. This first part was not there." Defendant's counsel objecting to reading the paper until offered in evidence, plaintiff's counsel offered to introduce it then, to which objection was made because it was not plaintiff's right to offer this evidence while defendant's witness was being examined. The court ruled that the paper could be identified and offered later. No other question about the paper was asked of the witness. When the testimony on the part of defendant was closed, plaintiff in rebuttal offered in evidence the writing which had been identified by Turner. Defendant objected because the witness had said that there was something in there now that was not when he signed the paper, and he had not been asked whether what was in there was true or false.

The court stated that under the evidence as it was, he would have to exclude the testimony.   Plaintiff's counsel testified about the paper, and again offered it in evidence.   Defendant's counsel, to avoid reading it in the presence of the jury, handed it to the judge and then objected to it on the ground already stated, and further, because it stated merely certain conclusions of the witness, even if the words be considered as having been deliberately adopted by the witness.   The judge said he would hear from plaintiff's counsel, and pending his argument asked him, "Suppose a witness was testifying, 'the dummy was running too fast,' would you think that admissible?"   Plaintiff's counsel took the paper from the judge, and in further pressing his argument read the words, "dummy running too fast" in the hearing of the jury, contending that it was admissible.   The court interrupted, saying, "Don't read the paper; I have read it, and know what is in it."   Plaintiff's counsel said, "But your Honor quoted it to me," to which the judge replied, "The court read no part of the paper, but put to you a suppositious case," and told him not to read the paper in the hearing of the jury, unless it was held competent evidence and until it was so held.   After the argument was concluded the court refused to admit the evidence.   Defendant alleges that this conduct of plaintiff's counsel, under the circumstances stated, was unfair and calculated to prejudice and unduly influence the jury as to their estimate of the value of the fireman's testimony, which was of great value to defendant, if true.

Pending the concluding argument plaintiff's counsel, without having given any notice in his opening speech of intending so to contend, spoke of the "outrage of defendant's wilfully keeping a notorious 'drunkard' in charge of its engine, to the manifest danger of the public," when the evidence did not warrant the contention that the engineer was a notorious drunkard, or that de-

fendant knew anything about his ever being intoxicated. Defendant alleges that this was unfair argument and calculated to prejudice and unduly influence the jury in finding against defendant, and in the amount of their verdict. In a note to this ground the judge states that he did not hear this part of the argument and his attention was not drawn to it by any objection made thereto.

While plaintiff was being examined and was allowed to testify about her boarding-house, over defendant's objection stated above, in answer to the question, "How many boarders did you have?" she testified, "Fifteen or twenty regular boarders all the time, and then the transient boarders occasionally. Steady boarders from fifteen to twenty and twenty-five at $5 per week." The court said, "Do not go into that." To the jury, "The answer of the witness as to the price the boarders paid is withdrawn. I admit the evidence as to her ability to carry on the business, but the amount she makes is irrelevant." Later in her examination, as reported by the official stenographer, the following occurred: Plaintiff's counsel, addressing the court, said: "Can I ask this question of the witness—well I will ask it. How many dresses could you make a week before you were hurt? A. From three to four." Defendant's counsel then said, plaintiff's counsel evidently thought, from the question he addressed to the court, that the question was inadmissible; and that from the allegations of the declaration, her ability to make dresses or what she can do in that line comparatively now, is inadmissible. The court said, "She can illustrate her capacity to labor by reference to the various employments in which she was both before and since." She was then asked, "You say you could make three or four dresses before you were hurt; what sort of dresses?" She answered, "Fine dresses, from $8 to $12 dresses," and was asked "How much can you do now?" The court said to the jury

that the last answer was ruled out. Defendant's counsel in argument contended that no sufficient *data* appeared in the evidence as a basis for a calculation of her monetary loss, or her capacity to earn money. In reply plaintiff's counsel said her ability to make so many fine dresses worth from $8 to $12, furnished such a basis. Because counsel did not agree that that evidence had been allowed, they asked the court about the same, and the court said, "In order that this point may be settled, the jury will understand that the court did not rule out what plaintiff said with reference to money that she made and could have made by her manual service in connection with the business of dressmaking." Defendant alleges that the court made a mistake in so instructing the jury, because said evidence had been ruled out, and the mistaken statement of the court was to defendant's injury. In a note to this ground the court states: The court misapprehended the answer of the witness, and did not intend to rule out the evidence. During the concluding argument for plaintiff, one of defendant's counsel came upon the bench and said he and the other counsel of defendant differed as to whether the court ruled in or ruled out the testimony as to what the plaintiff got for making dresses, that his recollection was the court ruled it in and the other counsel said it was ruled out. The court replied he did not rule it out, the testimony was in. In a few minutes the court interrupted plaintiff's counsel, saying a difference existed between counsel as to whether certain testimony was ruled out or not, and then turned to the jury and charged them as stated above, after which plaintiff's counsel continued his argument. Defendant was cross-examined as to the length of time she had been a dressmaker, but not as to the price she got for making a dress, and the cross-examination was conducted by the counsel who came upon the bench as above stated. This note having been

v 89-39

made, defendant amended this ground as follows : The misapprehension of the court and consequent actual state of the facts put defendant's counsel at disadvantage, preventing further testimony on that ground, and made a basis for increase of plaintiff's damages. The court further notes : No suggestion or intimation of surprise was made by counsel. Had it been suggested that the action of the court worked any prejudice to either side, the case would have been reopened for further cross-examination and for additional testimony, if desired.

The court charged : " The defendant pleads the general issue, which is a general denial on its part of every allegation made by the plaintiff. The effect of this plea is to put the burden on the plaintiff to establish the truth of every allegation which the law makes it her duty to establish—that is to say, which the law does not aid by a presumption in her favor—to your satisfaction, by a preponderance of the evidence. . . If you believe from the evidence that the plaintiff was injured in manner and form as alleged in the declaration and by the running of the cars of defendant, the presumption of negligence is against the company. The defendant may rebut this presumption, if it can. It may, in many instances, require but slight evidence to rebut the presumption of negligence against the company, but it always remains until removed by proof, which may be that offered by either side. If the company proves either that the plaintiff's driver consented to, or by his own negligence caused the injury, or that she could by due care have avoided it, or that the company was not negligent in any of the respects alleged in the declaration but used all reasonable care and diligence, the defence will be complete. Proof of either one of these things will relieve the company ; proof all of them is not required." The specific error alleged is, that the jury were instructed, in effect, that the fact of negligence by defendant need

not to be established to the satisfaction of the jury, because as to that fact the law does aid plaintiff by a presumption in her favor.

The court charged: "If you believe from the evidence that the plaintiff accepted an invitation of one Stewart to ride in a wagon, and that he was the driver of the wagon, and was a person every way competent and fit to manage a horse, and there was no reason that she could discover why she should not ride with him, she would not be chargeable with his negligence, unless his negligence in handling the horse was the sole cause and the real cause of the collision. Contributory negligence on his part concurring with negligence on the defendant's part, and both combining to bring the collision about, would be no defence for injuries resulting to the plaintiff from such collision. If, however, you believe from the evidence that the negligence of Stewart, the driver, in checking or pulling or turning, or otherwise handling the horse, was the sole cause and the real cause of the collision, without which it would not have occurred, such negligence would be chargeable to her, so far at least as the railroad company is concerned, and would bar all recovery by her. And again, if you belief from the evidence that the defendant was not guilty of negligence in the transaction resulting in the collision, but exercised all ordinary and reasonable care and diligence in view of the actual occasion and situation, and you further believe from the evidence that the collision was due to the fright of the horse, or his refractory disposition in suddenly throwing the vehicle across the track in front of the moving engine, so as to be caught by it, the plaintiff cannot recover." This charge was alleged to be error, because there was no evidence as to whether Stewart " was a person every way competent and fit to manage a horse" ; and because, if by Stewart's negligence the injury was caused in part,

it would be a defence in part as to the *quantum* of damages, but the expression "no defence" cut off that right of contribution between plaintiff and defendant.

The motion contained the grounds that the verdict was strongly and decidedly against the weight of evidence, and was excessive.

N. J. & T. A. HAMMOND, for plaintiff in error.

C. T. LADSON, *contra.*