## SMALLS *v.* THE STATE.

1. The fact that a fugitive from justice is in a state of armed hostility to, and in apparent defiance of, the lawful authorities, may be proved upon his trial for an alleged murder of one authorized to arrest him, though this fact was unknown to the deceased, if upon such trial it was a vitally important issue whether the accused was resisting a lawful attempt to arrest him, or in good faith making a defense against an unlawful assault upon himself. The evidence in question could not, of course, illustrate the conduct of the deceased, but was relevant as a fact or circumstance throwing light upon the conduct and motives of the accused at the time of the homicide.

99   25
s102  31
99   25
s105 670
s105 673
99   25
f109 423
99   25
117  739
99   25
119  436
99   25
f129 772

2. Where evidence, partly competent and partly incompetent, was offered and objected to as a whole, the illegal portion not being specified nor objected to separately, admitting all of such evidence affords no legal cause of complaint to the objecting party.

3. The court is not bound to give in charge requests which, though abstractly correct, are not fairly adjusted to the case on trial.

4. A fugitive from justice, accused of a felony and knowing that he is liable to be arrested on that charge, may nevertheless resist with such force as may be necessary an unlawful attempt to commit a crime upon him, whether such an attempt is made by an officer armed with a warrant for his arrest, or by a private citizen under circumstances authorizing him to make the arrest, and this is true although the fugitive may have known he was liable to be arrested by the person making the attempt.

5. It is one thing to resist a lawful arrest, and quite a different thing to resist an assault or other crime upon the person of the party liable to be arrested; and the latter cannot be deprived of his right of self-defense, either because the other party could lawfully have arrested him, or because he knew that this was so.

6. In view of the evidence introduced for the defense in the present case, the accused was entitled to have the principles of law above announced given in charge to the jury. As this was not done, and as the charges complained of in the motion for a new trial in effect excluded these principles from consideration by the jury, there must be a new trial.

March 6, 1896.

Indictment for murder. Before Judge Falligant. Chatham superior court. December term, 1895.

Abe Smalls was convicted of the murder of Jansen C. Neve, and his motion for a new trial was overruled. The motion alleged, among other grounds, that the court erred:

In permitting the witness Joseph Brown to testify, over stated objections, as follows: "I reside at East Broad and Anderson streets. I am a brother of George Brown. I remember the time that Mr. Humphreys is said to have been shot. The day before the killing of policeman Neve, I made a search for the party who shot Humphreys. I was hauling hay out of the field, and I ran across Smalls three times in my travels back and forth. Each time I passed Abe Smalls was near the haystack. I did not identify him

the first time; he had a coat and overcoat over his shoulders, with a gun, leaning on it. I taken him for some one hunting rabbits. The second time I saw him a little farther off, and the third time he was sitting by a ditch where the dirt had been taken out on Estill avenue. I went to the telephone and telephoned to the barracks for the city detectives, Boswell and Kavanaugh. I could not get Boswell and Kavanaugh, so I thought I would try and get him myself. I went down to Mr. Myers and told him to go home; that I would see if I could not get him. I started down in the field, and when I got to Seventh street I cut through the bushes as if I was hunting, so as not to attract his attention. Time I got to a point where I could see him, I saw he was apparently asleep, with his head between his legs. I took the ditch that would lead within fifteen feet of him, so I could walk right up on him like as if I was hunting. When I was about as far as from here to Bull street corner, there was a gunshot, and as that gun fired Smalls jumped like a deer, and looked one side and the other, as nervous as he could be. I didn't let on about seeing him, because I thought he might take and get up and go to shooting. I was not sure what he would attempt to do. I wanted to see if I could not get him without any trouble. He spied me, and rose up in a shooting position and grabbed the rifle lying alongside of him, and kept it right in front of him towards me. I passed right by; as I passed, he kept turning with me. I went a couple of hundred feet in the bushes and worked behind him again to see if I could see him make any movement. He walked off a little piece and found a kind of a little hill, and he got up on the hill and looked to see if anybody else was coming behind me. I watched awhile, and I seen he didn't attempt to go off any place after he got on that hill. I said, there is no way to get that fellow from the community unless you shoot him. I taken into consideration I had no authority to shoot him. I thought I had a right to make

the arrest, because he was a fugitive from justice at the time. I met Jerry Stiles, and I said, 'You get your gun.' It was a rifle he had. I heard something click. I could not say whether he cocked it or not. He kept the gun towards me all the while. He never raised the gun at all. That was the day before the killing, on land of Col. Estill about three eighths of a mile from where Neve was killed. I had a gun in my hand. I was making out I was hunting snipe in the ditch. I was not quite as far as across to the church from him."

In denying requests to charge: (*a*) That if the jury found from the evidence that deceased was one of a party of men, whether legal officers or not, going to arrest accused, with or without a warrant, under a charge of felony, and that the accused was subject to such arrest, and that in such attempt they approached him in a party, and before he offered resistance to arrest some one or more persons of the approaching party shot at him, and he thereon returned the fire and killed the deceased, this homicide would not be murder, but would be manslaughter or justifiable homicide as the jury might determine from the circumstances surrounding the whole affair. (*b*) That if under such circumstances the party "approached the accused in such a manner as to excite the fears of a reasonable man that they were about to do him serious bodily injury instead of merely arresting him, and at the time of and during such approach, and until he shot into the party, the accused was not offering resistance to arrest," and under such apprehension he shot into the party and killed the deceased, the result, as to grade of homicide, would be as before stated. (*c*) And so, if under such circumstances the party approached "in such a manner as to excite the reasonable fears of a person in the condition of life of the accused, that instead of merely arresting him, they intended to kill him or do him serious bodily injury," and his conduct was as before stated.

In charging the jury as follows: "If you believe, from the facts and circumstances of this case, that this man, the prisoner at the bar, in a state of quiet and peace, without any knowledge or reasonable ground of knowledge that these parties were there to arrest him, was suddenly set upon without warning, and an attempt was made upon his life, without any notification of arrest whatever, and without any opportunity on his part to surrender, as I say, without any knowledge on his part or reasonable ground to suspect that these parties were present to make an arrest, was suddenly set upon and his life put in peril, and acting upon the fears of a reasonable man and not in a spirit of revenge and not for the purpose of resisting an arrest, with no knowledge of the purpose of the parties making the arrest, and without malice, he fired the fatal shot, he would bring himself within the pale of the law. But in order to do that, to bring him there, you will consider all the facts and circumstances of the case in evidence before you, in determining whether he occupied the status that I have detailed, all the facts and circumstances in evidence before you, and see, under your oaths, whether he knew at the time or had reasonable grounds to believe, if it appears in evidence, that officers of the law came there in uniform of officers of the law, whether under the facts and circumstances of the case he, being a fugitive from justice, if the evidence shows it, and I express no opinion upon the evidence, whether, upon the facts and circumstances of the case, he knew or had reasonable ground to suppose that they were there for the purpose of making an arrest.

"When a mortal shot was fired, had the prisoner at the bar, acting under the fears of a reasonable man, the right to suppose his life was in danger? Consider the facts and circumstances of the case, where the first shooting occurred, what occurred afterwards, whether or not he was pursued by the officer attempting his arrest, if such appears from the evidence.

"Whether at the time he fired the fatal shot the officer was attempting to take his life, or any effort of that kind was being made, was he at the time acting under the fears of a reasonable man that his life was in peril and that it was necessary to take the life of the officer to save his own?

"I charge you, to slay an officer to avoid being taken into custody, knowing that his object is to make an arrest for felony committed several months previously, is murder; but done suddenly, without knowledge of his purpose or official character, and without malice, it is manslaughter.

"To kill him would be murder the same as to kill an officer, where nothing appeared to grade the homicide save that he intended and was attempting to make an arrest.

"If the prisoner at the bar, when these officers approached him, knew or had reasonable grounds to know that they were there for the purpose of making an arrest, it was his duty to submit to it. He had no right to fire upon them to prevent their making an arrest. If his purpose was in firing upon them to prevent an arrest and effect an escape, and in the execution of such purpose he took the life of one of the officers, whether he was an officer or a citizen of that locality he was under the protection of the law, and if the prisoner, for the purpose of preventing his arrest and effecting an escape, fired the fatal shot under such circumstances, the crime is murder, if he acted under such circumstances as brought him under the law of murder as given you in the charge by the court."

In that the court's charge impressed upon the jury the official character of the persons who were alleged to have been resisted by the defendant and one of whom was killed, and thereby attempted to add and did add a solemnity and enormity to the offense of killing Neve by clothing him with the character of an officer of the law, which, under the evidence, he did not possess at the time of the killing.

In that the charge assumed that there was evidence showing that at the time of the killing Neve and others were at-

tempting to arrest the defendant, while on the contrary the evidence was uncontradicted that no attempt was made, and that either the defendant shot at the pursuing party before any attempt to arrest was made, or that the pursuing party, including Neve, shot at the defendant without attempting an arrest.

C. N. West and T. P. Ravenel, for plaintiff in error.

J. M. Terrell, attorney-general, and W. W. Fraser, solicitor-general, contra.

LUMPKIN, Justice.

1. On the trial of the accused for the crime of murder, the court, over objection of counsel, admitted certain testimony tending to show that immediately before the homicide the accused, being a fugitive from justice, charged with a felony, was out in a field heavily armed, and by his conduct and movements manifesting an apparent defiance of the lawful authorities. This evidence consisted of the statements of a witness giving in detail the conduct and movements of the accused, indicating that he was on the alert, evidently watching out for the officers of the law, and fully prepared and determined to resist any attempt to arrest him. The objection to this evidence was, that these facts were not communicated to the deceased, who was one of a party who went out to arrest the accused.

The vitally controlling issue in the case was whether, in committing the homicide, the accused was resisting a lawful attempt to arrest him, or in good faith making a defense against an unlawful assault upon himself, or what he honestly believed was such an assault. The motives of the accused were directly in issue, and any evidence fairly illustrating or throwing light upon the same was competent, as being explanatory of his conduct under the surrounding circumstances. While the evidence in question obviously could not illustrate the conduct of the deceased, we can see how it might very properly and materially aid the jury in

determining the purpose with which the accused fired the fatal shot. The question, in its essence, being as to which party in the encounter was the assailant, this evidence was certainly admissible to show acts or conduct on the part of the accused indicating that he entertained a previous intention to make the attack. Proof of the accused's attitude of hostility, whether consisting of preparations or declarations, was pertinent as tending to show that he meditated an unlawful act of violence. In this connection, see Whart. Cr. Ev. (9th ed.) §757 and notes. The precise question there discussed is in regard to the admissibility of threats made by the deceased, but the reasoning is applicable to the present question.

2. The rule announced in the second head-note was fully discussed by the writer in the recent case of *Harris & Mitchell* v. *Amoskeag Lumber Company,* 97 *Ga.* 465.

3-6. In submitting to the jury the controlling issue in the case, the trial judge—probably inadvertently—fell into the error of using language capable of the interpretation that if the accused actually knew that the persons who approached him were authorized to effect his arrest, he had no right to make any resistance, even though he might reasonably apprehend from their demonstrations that their real purpose was not to make an arrest, but to commit upon him an unlawful act of violence. It must be borne in mind that the theory of the defense was, that there was no honest intention to arrest, and that the accused shot to prevent what he regarded as a murderous attack upon himself. The charge, in effect, ignored this defense, by making the right of resistance on the part of the accused depend upon whether he knew, or did not know, that the party of which the deceased was a member was authorized to take him into custody. The law upon this question is stated about as accurately as we can hope to put it in the 4th and 5th head-notes. There were numerous requests to charge, the purpose of which was to have the theory relied

on by the defense correctly submitted to the jury.   In the main, these requests embodied propositions of law which were abstractly correct; but we do not think the court was bound to give them in charge, for the reason that, in some respects, they were not fairly adjusted to the case as presented by the evidence.   They assumed that the firing by the accused which resulted in the homicide was done immediately upon the approach of the deceased's party, whereas the evidence on both sides shows that it happened some time after the deceased first appeared upon the scene, and after various changes in the relative positions of the parties had taken place.   Even if the persons who sought to capture the accused were in fact the aggressors in the first instance, and by their violent demonstrations put the accused in reasonable fear that a felonious attack upon him was meditated, and thereupon there was a mutual encounter during which each party used deadly weapons, still, if a running fight ensued which continued until the deceased was slain by the accused, under the peculiar facts of this case it would not necessarily follow that the homicide was justifiable.   It was so only if a legal necessity to kill existed up to that time; otherwise, the homicide would be voluntary manslaughter, or even murder, if deliberately done, maliciously and in a spirit of revenge.   Of course, if the accused was the original aggressor, intending to kill in order to prevent his arrest, the homicide was murder, pure and simple.

Thus far, we have dealt with the persons forming the party to which the deceased belonged, without reference to their official character.   It appears that some of them were policemen of the City of Savannah, the deceased being himself such an officer.   Irrespective of their authority, legally, to make arrests outside the corporate limits of the city, the fact that they wore the uniforms of officers was a circumstance which the jury might properly consider in reaching their determination as to the good faith of the

accused relatively to his contention that he honestly believed the object of these persons was to do him violence, rather than to peaceably arrest him.

*Judgment reversed.*