## SMALLS *v.* THE STATE.

|102   31
102  510

102   31|
s105 670|

102   31
106  764

1. It is both proper and right for a trial judge to see to it that a witness under examination is given a fair opportunity to answer the questions propounded to him, and to make any appropriate explanation of his testimony, including, whenever the same is material or relevant, a statement of the reasons upon which such testimony is based.
2. There was, in a trial for murder, no error in refusing to allow the jailer to testify as to his opportunities for observing the disposition and conduct of the accused while in prison, this evidence being offered for the purpose of showing his "character for quietude and peaceableness, as compared with other men," but counsel for the accused expressly declining to put in issue the general character of the latter "for peaceableness or violence."
3. Where in such a trial a juror asked a witness for the accused a question as to a material and important matter, and, when the same had been answered, replied to the witness, saying, in effect, that the latter had knowingly testified to that which was untrue and was aware that the juror so knew, such conduct on the part of the juror prima facie showed that he was not unbiased and impartial, and afforded good cause for moving that a mistrial be declared.
4. Where such an occurrence as that above indicated took place just before the noon recess of the court, and counsel for the accused availed himself of this opportunity to obtain evidence tending to show that as to the matter in dispute between the juror and the witness the latter was right, and immediately after the recess introduced this evidence and then made a motion for a mistrial, this motion was not too late, it being obvious that in offering the additional evidence there was no intention to waive what had occurred or consent that the trial proceed, but that the purpose in so doing was to make further proof of the juror's partiality and thus strengthen the motion for a mistrial.

Argued July 5, — Decided July 27, 1897.

Indictment for murder.     Before Judge Falligant.     Chatham superior court.     March term, 1897.

*C. N. West* and *T. P. Ravenel*, for plaintiff in error.

*J. M. Terrell, attorney-general,* and *W. W. Osborne, solicitor-general,* contra.

LUMPKIN, P. J.     This is the second appearance here of this case.     99 *Ga.* 25.     At the last trial in the superior court, the accused was again convicted of murder.     The questions made in the record now before this court will be briefly stated and discussed.

1. It appears that one George Brown, a witness for the State, was subjected to a rigid cross-examination.     While the same

was in progress, the court remarked: "I think the witness can give his reasons for what he says. He can say what he thinks proper in answer to the question, and give what explanation he wants." We gather from the record that the court simply meant to give the witness a fair opportunity to answer the questions propounded to him. Certainly there was no error in this. It was the right of the State, and the right of the witness, to have the jury understand exactly what the witness meant by his answers to the questions propounded to him, and it was essential to this end that he should be allowed to make any appropriate explanation of the language he had employed.

2. Complaint is made that the trial judge refused to allow the accused to prove by his jailer what the latter's opportunity had been for observing the disposition and conduct of the accused while in prison, his counsel proposing to follow this up with additional testimony on the part of the jailer showing the character of the accused "for quietude and peaceableness, as compared with other men." Presumably, therefore, the object was to show by the jailer that the accused, while in prison, had been a quiet and peaceable man. His exceedingly limited opportunities for being otherwise would, to say the least, render testimony of this kind of little or no value. But be this as it may, the law does not allow one on trial for crime to prove his good conduct on a particular occasion, or under given circumstances covering a limited period of time, as matter of defense. He may put his general character in issue; and if by evidence he establishes good character, this may in some instances serve to break the force of, or entirely overcome, the State's evidence against him. The court offered the accused full opportunity to put his general character in issue, but his counsel did not see proper to do this; and we are entirely satisfied with the ruling excluding the jailer's testimony, as offered.

3, 4. It became, during the trial, a seriously vital question as to whether or not one Eason, a witness introduced by the accused, could, from premises occupied by him at the time of the homicide, have seen certain occurrences testified to by him. Evidently, there was a contention on the part of the State that

intervening trees rendered it impossible for this witness, from his point of view, to observe what he stated had taken place. After the witness had answered that he saw the deceased fall from his horse, and had testified to his observation of other things most material in the case, a juror asked him the following questions: "Was not a pine-tree right behind your house? Is there not now a bunch of pine-trees behind your house?" to which the witness replied: "No, sir. Over on Seventh street there were three pine-trees, but they were a distance apart." The juror then replied: "You can't see from your back door. You know I know that place to where the shooting was. Don't you know you can't see from your house through that thicket?" The witness answered: "The field is perfectly clear and plowed up; not a bush or nothing in the way. On the hillside, that place never was planted; that's grown up in weeds. Where this other man was living, it was perfectly clear."

The plain meaning of all this is, that the juror meant to charge the witness with knowingly testifying to that which was untrue, and with being aware that the juror so knew. The colloquy between the juror and the witness occurred just before the noon recess of the court; and counsel for the accused, during the recess, caused a person to go to the place where the witness had resided at the time of the homicide, with a view to ascertaining whether, in point of fact, the place to which his testimony related was really observable from those premises, or whether the trees referred to by the juror obstructed the view. Immediately after the recess, this person, at the instance of the accused, took the stand and corroborated the version of the matter which had been given by the witness whom the juror had attacked. It is obvious that, in offering the evidence last referred to, there was no intention to waive what had occurred, or to consent that the trial proceed, but that the purpose in so doing was to make further proof of the juror's partiality, with a view to strengthening the motion for a mistrial, which counsel for the accused immediately thereafter proceeded to make.

We are of the opinion that the juror's conduct, prima facie,

showed that he was not unbiased and impartial, and afforded good cause for ordering a mistrial. He was setting up his own knowledge of a most material fact against that of a witness; practically accusing the latter of perjury, and in effect telling him that he was shameless enough to swear falsely, though aware that the juror knew he was so doing. How could the accused or his counsel entertain any reasonable hope that the remaining eleven jurors could be induced to believe the witness; and how could the trial court, or this court, with any degree of safety conclude that the juror could, in his frame of mind, give the accused a fair and impartial trial upon any branch of the case?

In the case of Com. v. McCormick, 130 Mass. 61, it was held that the judge properly discharged a juror pending the trial of several persons jointly indicted for assault and battery, because one of the jurors was discovered to be a surety upon a recognizance in the cause, entered into by one of the defendants before the trial. In the opinion by Colt, J., the fact that the juror had signed the recognizance was treated as a good ground of objection to his competency, and it was held that the trial judge rightly regarded this juror as being improperly upon the panel. This case is also reported in 39 Am. Rep. 423. On page 426 is the following note by the reporter: "In the recent English case of Reg. v. Bentley, Mr. Justice Grove discharged the jury pending the trial, because one of the jurors arose in the box, before the conclusion of the evidence for the prosecution, and said they did not wish to hear any more of the case; that they had already decided on their verdict. Another said they did not believe a word the prosecution's witnesses had said, and had made up their minds not to convict. Five jurors dissented from these expressions." In this connection, see, also, 1 Bish. New Cr. Law, § 1039, and cases cited. If a trial judge can be upheld in declaring a mistrial over the objection of the accused because of a discovery that a juror, incompetent because of his partiality or bias, is upon the panel trying the accused, a fortiori it would be the more appropriate to declare a mistrial for such cause when the same is asked for by the accused himself.

The motion for a mistrial in the present case was made at the proper time. Had the accused taken the chances of an acquittal, and after verdict asked for a new trial on the ground of the juror's want of impartiality, the motion would not have been entitled to favorable consideration. See *Metropolitan Street Railroad Co.* v. *Powell,* 89 *Ga.* 601; *Edwards* v. *State,* 90 *Ga.* 143; *Metropolitan Street Railroad Co.* v. *Johnson,* Ibid. 501; *Farmer* v. *State,* 91 *Ga.* 720. As already remarked, the introduction of further testimony showing that, in point of fact, the witness attacked by the juror had told the truth about the matter in controversy, could not be fairly treated as a waiver by the accused of his right to a mistrial on account of the juror's evident hostility to him. This is a case of life and death, in which the evidence is conflicting; and this being so, we can not give our sanction to a conviction and sentence, when the record satisfies us that the plaintiff in error has not had a trial before twelve jurors, each and every one of whom was absolutely unbiased and "perfectly impartial between the State and the accused."

*Judgment reversed.　All the Justices concurring.*