J. S. BRADLEY, Administrator of SARAH J. KANIPE v. OHIO
    RIVER AND CHARLESTON RAILWAY CO. *et al.*

(Decided May 29, 1900.)

*Negligence—Public Highway Crossing—Evidence, Res Ges-*
    *tae—Corroboratory—Issues—Prayers for Instruction—*
    *Charge—"Flying Switch" and "Kicking Cars"—Hack*
    *Driver and Passenger—Sifting Exceptions.*

1. There is evidence of negligence on the part of the defendant in
    backing its cars on the crossing, at a depot, without giving
    timely signals and without keeping a reasonable lookout, and
    in "kicking" its cars back over the crossing without rea-
    sonable and proper means to stop the train in case of danger.

2. A crossing which the public have been habitually permitted to
    use is treated as a public highway crossing, and it is compe-
    tent to prove the custom of the defendant and the public in
    using it.

3. It was competent to show as part of the *res gestae*, that the hack
    and the body of another lady injured at the same time were
    pushed back by the train, as tending to show that it was a
    detached train and only stopped by this obstruction.

4. A party may corroborate his witness by showing that he had
    theretofore made similar statements to his testimony on the
    stand, but he may not go further to show other statements
    made by the witness not testified to by him on the stand, as
    that would be mere hearsay.

5. The framing of issues is largely left to the sound discretion of
    the trial judge, when the issues submitted arise on the plead-
    ings, and every phase of the contention or the parties can be
    presented thereunder, they are not subject to review.

6. Under our system of submitting issues, a general prayer that "the
    plaintiff cannot recover" should never be granted. Upon the
    issues found, the court adjudges as a matter of law whether
    plaintiff is entitled to judgment. A Judge is not required
    to charge in the exact language of a proper prayer, so he give
    the substance in his charge.

Bradley *v.* Railway Co.

7. The definition given by his Honor of negligence—"the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation; the omission to use means reasonably necessary to avoid injury to others"—is justified by precedent.

8. "Flying Switch" and "Kicking Cars" are terms in railroad nomenclature denoting nearly the same thing. In making "flying switch," the engine may be in front, and upon being disconnected the rear cars may be run upon another track while still rolling. In "kicking cars," the disconnected cars are given their impetus by a backward motion of the engine, which does not follow them. The same principle of law applies—it is gross negligence to kick a car across a highway unattended.

9. A passenger is not responsible for conduct of hack driver unless he assumes to direct and control him.

10. While counsel are the sole judges of what exceptions they shall think proper to bring up for review, it is suggested that fifty-four "fatal errors" in any one trial is rather an unnecessary number, and a sifting process is recommended

Civil Action for damages for occasioning, through negligence, the death of intestate, Mrs. Sarah J. Kanipe, tried before *Allen, J.,* at August Term, 1899, of McDowell Superior Court, upon these issues:

1. Was the intestate negligently killed by the defendant railway company in failing to give timely signals before backing its car on crossing? Answer. "Yes."

2. Was intestate negligently killed by defendant railroad company by backing its car on crossing without keeping reasonable and proper lookout? Answer. "Yes."

3. Was intestate of plaintiff negligently killed by the defendant railway company kicking its train over the crossing described, without taking reasonable and proper means to stop its train in case of danger? Answer. "Yes."

4. Did the intestate, by her own negligence contribute to her death? Answer. "No."

5. What damage is plaintiff entitled to recover? Answer. "$6,000."

BRADLEY *v.* RAILWAY CO.

There was judgment in accordance with the verdict, and defendant appealed.

The evidence, substantially, and the exceptions appear in the opinion.

*Messrs. P. J. Sinclair,* and *Locke Craig,* for appellant.
*Messrs. E. J. Justice,* and *S. J. Ervin,* for appellee.

CLARK, J. The plaintiff's intestate, Mrs. Kanipe, was a passenger on the defendant's road, who had just gotten off the train at Henrietta station. She took passage on the hack of one Higgins to go to Henrietta Mills. It was necessary to cross the railroad track a few yards in rear of the train from which she had just alighted. The train backed, but was concealed from view by a line of box cars on a side track, and the backing train ran over the hack, killing Mrs. Kanipe. The jury found that the intestate was killed by the negligence of the defendant in backing its cars on the crossing, without giving timely signals and without keeping a reasonable lookout, and "kicking" its cars back over the crossing without reasonable and proper means to stop the train in case of danger; that the intestate was not guilty of contributory negligence, and assessed the amount of damages. Appeal by defendant.

Exceptions 1, 2, 3, 4, 5, 7 and 10 to evidence, and 2, 3, and 5 to the charge, present the question whether it is competent to prove the custom of the defendant as to where it stopped its train and discharged its passengers, and the custom of the defendant and the public in using the crossing where the plaintiff's intestate was killed. This was competent, both upon the question of negligence of the defendant in backing its train, as to the notice to be given, and whether the intestate was guilty of contributory negligence in at-

47——126

tempting to cross. "A crossing which the public have been habitually permitted to use" is treated as a public highway crossing. *Russell v. Railroad,* 118 N. C., 1098, and cases cited. The evidence, showing that it was the custom of the company never to back its trains over this crossing after passing it, was material in determining what degree of care was required when backing, contrary to custom, and in showing that the intestate had a right to rely upon the custom of the company not to back its train (*Blackwell v. Railroad,* 111 N. C., 151), unless notice was given.

Exceptions 8 and 9 were to evidence that the conductor in charge of this train knew of the custom of hackmen crossing at this crossing after his train had passed it, and that he had notified the witness, who was foreman of the stables employing the hackman, that hacks could pass at that crossing after the train had once cleared it, and that the latter had so notified the hackman who drove Mrs. Kanipe. The evidence was competent and pertinent.

Exceptions 6, 13 and 14, to evidence, are clearly without merit, and need no discussion.

Exceptions 11 and 12 were to the admission of evidence tending to show that the hack and the body of Miss Kanipe (who was injured at the same time), were pushed back by the train. The evidence was offered, and, the Judge stated, was admitted only as a part of the *res gestae* as evidence tending to show what stopped the train, that it was detached from the engine, "kicked back," and was only stopped by this obstruction. The defendant's contention was that the train could not have been stopped so soon if the engine had been (as plaintiff alleged) detached.

Exception 15 is to the rejection of proposed testimony by the witness Horne as to statements made by one Coxe who had testified for the defendant. So far as he corroborated

Coxe by showing that he had theretofore made similar state-
ments to his testimony on the stand, the testimony was com-
petent, and was admitted by the Court; but when the defend-
ant wished to go further to show other statements made by
Coxe not testified to by him on the stand, it was mere hear-
say, and did not come within any exception to the rule which
rejects hearsay evidence, and was properly refused.

The exceptions to the issues can not be sustained.   The
framing of the issues is largely left to the sound discretion
of the trial Judge.   When the issues submitted arise on the
pleadings and every phase of the contention of the parties can
be presented thereunder, they are not subject to review.
*Pretzfelder v. Insurance Co.,* 123 N. C., 164; *Willis v. Rail-
road,* 122 N. C., 905; *Williams v. Gill, Ibid,* 967.

The defendant's prayers for instructions numbered 1, 3, 5,
6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 21, 22 and 24, so far as
they were correct, were given in substance in the charge. The
Judge was not required to use the exact language of the
prayer. See cases cited in Clark's Code (3d Ed.), p. 539.

In lieu of the 20th prayer, the Court properly charged, "If
you find from the evidence that this was a crossing where
the public had been habitually permitted to cross and with the
sanction and knowledge of the defendant, then it became the
duty of the defendant, before it backed its cars on the cross-
ing, to give signals that it intended to do so, and to give them
in time for persons approaching the crossing to avoid the
danger, and if the defendant failed to give any signal when
it backed its cars upon the crossing, or failed to give them
in time to warn a person who was in the exercise of ordinary
care, and the killing followed as a direct result, then it was
a negligent act, and you should answer the first issue "Yes."

Prayers for instructions number 2 and 4 were that there
was no evidence to support the allegations therein contained,

and the plaintiff can not recover thereon. Under our system of issues being submitted, a general prayer that "the plaintiff can not recover," should never be granted. *Witsell v. Railway Co.,* 120 N. C., 557, and other cases cited in Clark's Code (3d Ed.), p. 535. Upon the issues found, the Court adjudges as a matter of law whether the plaintiff shall recover judgment. Besides, in this case, the Court could not tell the jury that there was no evidence to support the allegation referred to.

Prayers 17 and 18 were that the Court should tell the jury that two isolated facts, if facts, would not be negligence. Possibly it would not have been error to have given these prayers, though it is the weight of authority that whether a flagman ought to have been at the crossing was a question for the jury. *Railroad v. Ives,* 144 U. S., 408. But the Court is not called upon to express an opinion upon each isolated fact whether it *per se* would be negligence or not, and a failure to do so is not reversible error, when, as here, the Court has placed before the jury every phase of the circumstances which the defendant contended was true, as a whole, and instructed the jury properly in regard thereto. It is not whether any single disconnected fact, taken alone, would or would not be negligence, but whether any given state of facts, which there is evidence tending to prove, would justify a certain finding upon the issue named. These two prayers leave out the important surrounding circumstances. It is as if a party were to ask the Court to say that $1 is $1, that 0 is 0, and another 0 is 0, and theretofore to argue that the defendant can not possibly be indebted to the plaintiff $100 though the circumstances, taken as a whole, may show that he is entitled to that response upon an issue "whether the defendant is indebted to him, and if so, how much."

The 19th prayer could not have been given, for it assumes

BRADLEY *v.* RAILWAY CO.

as a fact that Mrs. Kanipe could have seen the train, when there was contradictory evidence.

As to the 23d prayer, whether the sounding of a whistle, when the train was 50 feet away, was timely, was a question of fact for the jury, and not a matter of law.

The exception to the "charge as given" would, if intended as an exception, be untenable as "broadside," but it is doubtless stated by the appellant merely as matter of inducement to the thirteen specific exceptions to the charge, which follow. The first of these is to the definition of negligence, as "the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation; the omission to use means reasonably necessary to avoid injury to others." This definition is justified by precedent, *Railroad v. Jones,* 95 U. S., 439; 16 Am. and Eng. Enc. (1st Ed.), 390. It was used by the Judge in *Norton v. Railroad,* 122 N. C., at p. 920, though it was not there excepted to. It may be that a more scientific definition could be framed by a skillful dialectician, but we can not see that the defendant was prejudiced by the use of the one furnished by the Judge.

The matter presented in exceptions 2, 3 and 7 to the charge, taken in connection with the context, is unobjectionable.

The fourth exception is as to matter which is in the defendant's tenth prayer for instruction, and as to which he has also erroneously excepted, because not given.

As to the 5th and 6th exceptions to the charge, the law requires those in charge of a moving train to keep a lookout along the track even where there is no crossing, and, if they could have saved life by proper lookout at a crossing, failure to do so is certainly negligence. *Pharr v. Railroad,* 119 N. C., 756; *Deans v. Railroad,* 107 N. C., 686; 8 Amer. and Eng. Enc. (2d Ed.), 293, notes 2 and 3.

The 8th, 9th and 12th exceptions to the charge, can not be sustained.    Patterson Acc. Ry. Law, sec. 167; 2 Wood on Railways, 1513; 8 Am. and Eng. Enc. (2d Ed.), 397, 398, note 2.

The matter referred to in 11th exception is a correct statement of the law.    8 Am. and Eng. Enc. (2d Ed.), 419, 420, and notes.    "Making flying switch" and "kicking cars" are terms denoting very nearly the same thing.    In the former, the engine may be in front, and, upon being disconnected, the rear cars may be run upon another track while still rolling. In "kicking cars" the disconnected cars are given their impetus by a backward motion of the engine which does not follow them.    The same principle of law applies.    In *Schindler v. Railroad,* 87 Mich., 410, it is said:  "It is gross negligence to kick a car across a highway unattended."    *Key v. Railroad,* 65 Pa., 269; *Railroad v. Smith,* 18 L. R. A., 63; *Railroad v. Baches,* 55 Ill., 379.    Here, the only person who, the defendant contends, was on the train, was an 18-year-old negro, and he was not on the end of the backing train, but says he was between two cars to put on brakes.

The 13th exception to the charge is to the language: "She (Mrs. Kanipe) was not responsible for the conduct of the driver unless she assumed to direct or control him."    There was no error in this.    *Little v. Hackett,* 116 U. S., 366; *Railroad v. Powell,* 89 Ga., 601; *Railroad v. Cooper,* 85 Va., 939; *Bottoms v. Railroad,* 114 N. C., 699; *Crampton v. Ivie,* 124 N. C., 591.    In the last-named case, two Judges dissented, but not upon this point, as to which the Court was unanimous.

There are fifty-four exceptions in this case, all of which have been carefully considered.    Only errors which are material and fatal can entitle a party to a new trial, and none which the appellant does not have reasonable ground to think

such should be brought to this Court. There could be no necessity to show fifty-four fatal errors in any trial. Counsel, not knowing what will be the views of the Court, are the sole judges of what exceptions they shall think proper to bring up for review, but it is not necessary to bring up every exception which through abundant caution is taken on the trial. If in making up a case on appeal counsel will sift out and drop those presenting the same points already made by another exception, and those exceptions which have already been held against the appellant in other cases, and harmless errors not justifying a new trial, the number left will still be enough to occupy the time allotted for argument, and will concentrate both the argument of counsel and the attention of the Court upon the vital points which should determine the appeal. *Pretzfelder v. Insurance Co., supra.* In saying this, we are laying down no rule for counsel, who must always decide for themselves what exceptions the interest of their clients shall require them to bring up for review, but we are suggesting that a little more care and discrimination in selecting exceptions to be passed on by this Court might in many cases lighten the labors of counsel as well as of ourselves, and be conducive to the ends of justice by concentrating attention upon the really vital points of the case.

Affirmed.

FAIRCLOTH, C. J., dissents.