JAMES K. CREDLE v. NORFOLK & SOUTHERN RAILROAD COMPANY.

(Filed 22 September, 1909.)

1. **Carriers of Goods—Rights of Way—Invitation Implied—Trespass.**

A railroad company by customarily allowing passengers to get off and on a train stopping at a coal-chute, collecting their fares therefrom, etc., impliedly invites them to do so, and one acting accordingly is not a trespasser on the lands of the defendant there.

2. **Same—Negligence—Questions for Jury.**

Evidence on the question of actionable negligence is sufficient upon which to submit the case to the jury, tending to show that defendant railroad company knowingly permitted passengers to get off and on its trains stopping at a coal-chute in a town, some distance from the station, collected fare there, etc., and that plaintiff, a passenger, got off the defendant's train at that place on a dark night, and fell into defendant's unlighted coal-chute nearby, sustaining the injury complained of, which could have been prevented by a guard-rail.

APPEAL from *Cooke, J.,* April Term, 1909, of CRAVEN.

Action for damages for personal injury. Judgment for plaintiff. Defendant appealed.

*Simmons, Ward & Allen* and *D. L. Ward* for plaintiff.
*Moore & Dunn* for defendant.

CLARK, C. J. The train stopped at the coal chute, a short distance before getting to New Bern, as was its custom. The plaintiff got off there, as his house was close by. He testified that he had been in the habit of doing so, without objection by the railroad authorities, ever since he had been living there, some three years. The chute was in town limits, about three blocks from the station. It was not a station, but the uncontradicted evidence was that for years people in that part of the town

had been getting on and off at that point, without objection or hindrance from the railroad officials, and that while no tickets were sold there the conductors would collect the fare.   Several well-beaten paths or streets lead to the railroad at the chute. When the train stopped there, on this occasion, the plaintiff got off on the side next to his home.   There was a string of cars on the other side; it was very dark, and at that time the defendant had no lights there.   The chute was close beside the track—the defendant's witness says 7 feet 4 inches from the chute to the center of the track.   The chute was 17½ feet wide, 31 feet long and 75 feet high.   The defendant's witness says it was "perfectly practical to have put a rail there," which would have "kept the plaintiff from falling in."   The plaintiff testified that he was proceeding cautiously, but had not taken more than two or three steps after he got off the train before he fell in the chute, and was injured by falling some fifteen feet down the chute.

There are several exceptions, but in effect there is but one, which is that there was no evidence of negligence to submit the case to the jury.   We think his Honor properly held that there was.

It is not altogether unusual in the suburbs of a town for the engine to stop at a coal chute or water tank and for people in that part of the town to get on and off at such place for their own convenience.   Johnson Street in Raleigh is a well-known instance.   When the railroad for a long series of years has permitted such practice as has been here testified, it was negligence not to put a railing across the mouth of the chute alongside the track, as defendant's conductor testified was "perfectly practical" to keep persons from falling into the chute, especially when, as here, the night was dark and the defendant had no light there.   The conductor testified that passengers were in the habit of getting on and off at that point, and that he took the money of those getting on.   Such conduct amounted to an invitation to get off there, especially as the conductor did not warn the plaintiff.   *Johnson v. Railroad,* 130 N. C., 488.

The court correctly charged, among other things: "If it had been the custom for a considerable time for persons in the neighborhood of the coal chute, wishing to become passengers on the outgoing trains of the defendant, to enter upon the same, when they stopped at the coal chute, without tickets, and to pay the fares in money, which were accepted by a conductor, without objection, and that it had also been the custom for them to leave the trains on their return, when the trains stopped at the said coal chute, and of which the agent of the defendant operating the said trains had notice, then the said passengers alighting

from said train would have the license to be upon the lands of the defendant; and if they and others had habitually used ways and paths across the lands of the defendant for the purpose of coming to or going from such trains, then there would be a license for them to do so; but if these facts did not exist, then one getting off the trains at that point and going on the lands of the defendant would be a trespasser." *Troy v. Railroad,* 99 N. C., 306; *Bradley v. Railroad,* 126 N. C., 735; *Bennett v. Railroad,* 102 N. C., 235. Another case in point is *Ray v. Railroad,* 141 N. C., 84, which holds that such usage would make the plaintiff a licensee, and the defendant would be liable for its negligence. A case exactly in point is *Hulbert v. Railroad,* 40 N. Y., 146, which is so fully stated that we need only to refer to it. It is there held that "Wherever passengers are accustomed to be received on a train, whether at the station house, at the water tank or elsewhere, railroad companies are bound to keep in a safe condition for transit the ordinary space in which passengers go to and from the train; and the latter have the right to assume that the ground adjacent to the cars, within the limits in which persons necessarily and naturally go to and from them, admits of their getting safely out and in, even on a dark night."

The jury found that the defendant was guilty of negligence, and that the plaintiff was not guilty of contributory negligence. There was evidence justifying the submission of these issues, and we find they were submitted under proper instructions from the court.