STATE v. FRANK STARNES.

(Filed 27 November, 1940.)

1. Criminal Law § 51—

The evidence tended to show that defendant killed deceased by a violent blow with a hammer. Defendant testified that he did not "hit her hard." *Held:* The action of the solicitor in striking his hand upon a table with some violence and asking the defendant if the blows that defendant struck deceased were like that, *is held* not to have seriously prejudiced defendant and was not such as to call for the exercise by the court of its discretionary power of supervision.

2. Criminal Law § 53e—Statement that court would strike evidence unless it corroborated witness, and failure to strike it out, held not expression of opinion on weight of evidence.

The court remarked that it was admitting evidence for the purpose of corroboration and that if the evidence did not corroborate the witness it would strike it out. The evidence was competent and was not stricken. *Held:* The remark of the court taken in connection with the failure to strike is not an expression of opinion by the court that the evidence did corroborate the witness, it being apparent that the court was referring to the function of the evidence rather than its effect, and the contention that it amounted to an expression of opinion on the weight of the evidence is too remote to afford an inference of substantial prejudice.

3. Same—Instruction that jury should consider proof of relevant facts by the State held error as expression of opinion.

In this prosecution for homicide, defendant's testimony tended to show a quarrel between him and deceased and an attack made upon him by deceased. The court charged the jury that the jury might consider the entire absence of provocation and *proof* that there was no quarrel between them prior to the killing upon the question of premeditation and deliberation. *Held:* The instruction is susceptible to the construction that the absence of provocation and of any quarrel before the killing had been proved, and the instruction must be held for prejudicial error as an expression of opinion by the court upon the weight of the evidence.

STACY, C. J., dissents.
WINBORNE, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Johnston, Special Judge,* at Criminal Term, 24 June, 1940, of MECKLENBURG. New trial.

At the criminal term of Mecklenburg Superior Court referred to, the defendant was tried upon an indictment for the murder of Anna Harris. The jury returned a verdict of murder in the first degree and defendant was sentenced to death by asphyxiation, as provided by law, from which defendant appealed.

The evidence of the State discloses that on 29 May, 1940, one Anna Harris, a colored woman, was found lying in a pool of blood in her

house in Charlotte, where she had been living with the defendant. Shortly before the body was found there, the defendant was seen to get out of a car and go into the house. The State's witness, McCullough (R., p. 3), testified that after defendant went into the house, he heard the deceased and the defendant talking; that he heard the deceased saying "Don't hit me like that." He then heard someone run out of the house.

The evidence discloses that on Sunday prior to the killing on Wednesday, while at the dinner table in company with the deceased and the defendant, the defendant made the remark, "You know one thing, you going to come in one of these days and you going to find your sister dead as hell, lying on the floor." This witness further testified that when he came into the house where the deceased and the defendant were living about 8 o'clock on the night of the killing, the deceased and the defendant were sitting and talking; that this witness left the house and returned about an hour later and found the deceased lying on the floor; that the defendant was not there; that the deceased had apparently been beaten over the head with a hammer; that there was a hole in her head and her brains were knocked out on the floor.

The witness Woodall (R., p. 6), testified that at about 9:15 on the night of the killing the defendant came to his house and said: "Well, I guess you all through seeing me walk around here for awhile. I killed Mac just now." ("Mac" was the name by which he called the deceased.)

The defendant was arrested shortly after the killing by officers McCall, Huneycutt and Yandle. When arrested the defendant made a statement to them to the effect that he and the deceased had an agreement that if she caught him in bed with a Negro woman she was going to kill him, and if he caught her in bed with a Negro man he was going to kill her. He further stated at this time that when he went home on the night of the killing, he found one Nathanial Tillman in bed with the deceased; that she had no clothes on; and after Tillman left the house, which was shortly thereafter, he and the deceased had an argument; that he slapped her while she was in bed; that she jumped up and ran into the front room and that he slapped her again in there, and that she ran through the middle room and as she was going from the middle room to the kitchen, he grabbed a hammer and struck her with it. He told these officers that he did not know how many times he hit her. The officers testified that when they first came to the house, the dead woman was lying with her feet towards the middle room, with her head in the doorway between that room and the kitchen; that there was a large hole in the right side of her head and there were four or five other places where apparently she had been struck with a hammer or some other

sharp instrument. These officers also testified that a blood-stained hammer was found near the body.

The defendant himself went on the witness stand (R., p. 12), and testified that he had been living with the deceased as man and wife for about a year and a half; that they were not married; that on the night of the homicide he came home and found Anna and Nathanial Tillman sitting on the side of the bed in the house; that the deceased had been drinking and they got in an argument about what they were going to have for supper; that the deceased refused to cook him any supper; that she had been drinking wine and that when he complained because she would not cook him something to eat, she attacked him with an ice pick; that he warded off the blows as much as he could; that he backed away from her toward a window where there was a hammer lying; that she kept on striking at him with the ice pick, and that he, in order to protect himself, hit her with the hammer three times. (R., p. 13.) The officers who arrested the defendant and who inspected the scene of the homicide all testified that no ice pick was found on the premises where the killing occurred.

The evidence also discloses that the day before the killing, defendant threatened the life of the deceased. The witness, Annie Harris, sister of the deceased, testified that she went down to her sister's house about 12 o'clock the day before the killing; that the defendant came into the house about 2 o'clock and asked her if she had anything to cook. She told him no, and he then told her, "I know one damn thing, very next time I come in here and you don't have me something to eat cooked, I'm going to kill you." (R., p. 19.)

A witness, Simmons, testified that he examined the deceased and prepared her for the photographer to make pictures of the wounds. "I found six holes. The larger hole seemed to be about the back of the ear and seemed to have severed the common carotid artery at the top and it was a fractured part here and there was two besides this large place and one here and one in the top of the head. We took the hammer and placed it in the wound and the small part went up to the handle  .  .  . the ball part went in up to the handle in there behind the ear."

Upon the question of premeditation and deliberation the court instructed the jury *inter alia* that they might consider an entire absence of provocation and the proof that there was no quarrel just before the killing, to which the defendant objected and excepted.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State, appellee.*

*A. A. Tarlton and Brock Barkley for defendant, appellant.*

SEAWELL, J. The defendant here relies upon two assignments of error. The first is as to the conduct of the solicitor during the course of cross-examination of defendant with regard to the force of the blow which the defendant admitted he administered on the head of the deceased with a hammer. As to this, the State's witness, Simmons, had testified as above appears.

The defendant having testified substantially that he did not "hit her hard," the solicitor, with some violence, struck his hand upon the table and asked the defendant if the blows defendant had stricken were like that.

We do not think, under the circumstances of this case, that the defendant could have been seriously prejudiced by this act of the solicitor. We are also of the opinion that the incident was not of such a nature as to call for exercise of the discretion which must be accorded to trial judges—to whom is committed the immediate supervision of such matters—in defendant's protection.

The second assignment of error includes suggested violations of the provisions of C. S., 564, forbidding the judge to give any expression upon the weight of evidence.

There is an exception under this head relating to an incident occurring during the course of the trial. The State's witness Huneycutt was asked to repeat what the State's witness Grainger Harris had told him with regard to a threat made by defendant. To this defendant objected and the court admitted the evidence with the statement that it was doing so "purely to corroborate him (Harris) and for no other purpose. If it does not corroborate I will strike it out." Inasmuch as the evidence was not subsequently stricken out, the defendant contends that it was tantamount to a statement by the judge that it did so corroborate Harris. As to this question we think the judge used the word "corroborate" in a purely formal sense—as classifying the evidence, referring to its function rather than its effect. The conclusion that the judge had thus expressed an opinion on the weight of the evidence is too remote to afford an inference of substantial prejudice to the defendant.

However, we are unable to give entire approval to that portion of the charge noted above relating to deliberation and premeditation; that the jury might "consider an entire absence of provocation" and "the proof that there was no quarrel just before the killing."

The testimony of the defendant did disclose such a quarrel and an attack upon him by the deceased. Whether the jury should believe this or not is not our affair; it must be held that they understood the English language in its ordinary use and at least knew the difference between *evidence* and *proof*—a distinction maintained in both the common and the technical acceptation of these terms. Also since the presence of

provocation, when it exists, has a bearing on the question of deliberation favorable to defendant, just as its absence has an unfavorable bearing, the form of the instruction is open to the same objection. It is not taking an impractical view of the situation to say that the jury may have understood the judge to intimate that the absence of provocation and of any quarrel before the killing had been proved. Such an assumption, of course, would be to express an opinion upon the evidence. *S. v. Kline,* 190 N. C., 177, 129 S. E., 417; *Bradley v. R. R.,* 126 N. C., 735, 36 S. E., 181; *Pigford v. R. R.,* 160 N. C., 93, 75 S. E., 860.

In returning this case for a retrial it must be understood that we regard the incident as a casualty which might befall the ablest of judges. However, considering that the crime of which the defendant stands convicted draws the penalty of death, we are unable to relax the standards by which such conviction must be had.

We do not deem it necessary to pass upon other exceptions in the record. The error pointed out entitles the defendant to a new trial, and it is so ordered.

New trial.

STACY, C. J., dissents.

WINBORNE, J., took no part in the consideration or decision of this case.