[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 385 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 386 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 387 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 388 
All the material questions of fact were fully and fairly submitted to the jury upon the trial; and the judgment having been affirmed in the supreme court, the verdict is conclusive here upon all such questions of fact. The judgment must therefore be affirmed, unless there was some error upon the trial, in matter of law. It is claimed on behalf of the defendants that, as matter of law, Newson, the deceased, was guilty of negligence in going after the second load, in view of the undisputed evidence that the defendants were using the track with their locomotives immediately adjoining the place where the deceased was loading his wagon the first time, and that his horses then became frightened; and that the plaintiff should have been non-suited, or a verdict ordered in the defendants' favor. *Page 389 
The jury have found, as matter of fact, upon the evidence, that the deceased was not guilty of negligence on his part in going after the second load, notwithstanding the evidence as to what took place when he was taking the first load. In view of all the facts and circumstances of this case, the question of negligence in going after the second load, when the injury happened, was most clearly a question of fact for the jury. Although there is evidence to show that the horses were frightened by the locomotive, when it came along so near to them, as the deceased was taking on his first load, it also appears that the deceased held them readily. It does not appear that they moved at all from the place where they were standing, or became in any degree restive, so as not readily to submit to control. The locomotive passed, and the deceased finished putting on his load, and went away safely without any serious trouble or difficulty. The jury might well say from this evidence that the team was a suitable one to take to such a place, and that there was nothing attending the taking of the first load to lead a person of ordinary prudence to apprehend any danger in going after the second load; especially in view of the legal rights and duties of the respective parties, as laid down by the judge in his charge. The place was the one designated by the defendants' agent for the team to go for that purpose, and even if the defendants had, in one instance, in violation of their duty, run their locomotive so near as to frighten the team, the deceased was not bound to presume they would do it a second time. He might well suppose they would not voluntarily endanger his safety a second time, in violation of his rights, and their duty, while acting under their directions. It would be going quite too far in favor of these corporations using these mighty forces, so irresistible and so dangerous to those happening to come in their way, to hold, as matter of law, that a person receiving an injury had been negligent, and so remediless, unless he had acted upon the assumption *Page 390 
that they would in any case act in total disregard of his rights, and their own plain duty towards him and others.
The law will never hold it imprudent in any one to act upon the presumption that another in his conduct will act in accordance with the rights and duties of both, even though such other has once conducted himself in a contrary manner. Here the deceased was unloading the defendants' cars at the place where they had been left for unloading, and at the very point designated by their agent, using his team as all the parties contemplated when the arrangement was made. It was part of the contract that the deceased, or some other person, should go there with his team, and take away the freight which the defendants had transported in their cars and left there to be taken away in that manner. It is too plain for argument that it was part of the agreement, that the person thus going there for that purpose should not be molested or endangered in his person or property, by any act or proceeding on the part of the defendants. They owed him a plain and clear duty not to expose him to danger while there, employed in that manner, and it does not lie with them to say he was guilty of negligence in going there under the agreement, even though the subordinate flagman, who knew nothing of the arrangement, warned him that it was a dangerous place.
The defendants were under no overpowering necessity of using the track in question on that occasion. Conceding it to have been the usual and most convenient track for the purpose for which it was then being traversed, it was not the only one that might have been used. There were several others which might have been used; so that the omission to use the one in question for the time being, did not involve a suspension of the defendants' business. The most that can be claimed on that subject is that by being compelled to use another track, at that time, they might have been put to some slight inconvenience. That is not *Page 391 
sufficient to affect the otherwise plain implication of the agreement, that they would do nothing to place the person going there in jeopardy. The act of the defendants, therefore, in running their locomotive engine over that track, at the time and under the circumstances, was a clear act of negligence and breach of duty on their part towards the deceased, and the judgment should be affirmed.
All the judges concurred, except DAVIES, J., who read an opinion for reversal, and INGRAHAM and SELDEN, JJ., who did not vote. Judgment affirmed. *Page 392