ALEXANDER BLACKWELL, Administrator, v. THE LYNCHBURG
AND DURHAM RAILROAD COMPANY et al.

*Issues—Damages—Negligence—Railways—Eminent Domain—
Presumption.*

1. The trial Court may exercise a discretion in altering or substituting
   issues, when those so altered or substituted will permit any specific
   view of the law arising out of the testimony to be presented.

2. While excavating by blasting is a legitimate means of construction of
   railways, and its prudent use is deemed to have been in contem-
   plation in the assessment of damages for right-of-way, nevertheless,
   where damage results therefrom to the lands of an owner adjacent
   to those condemned, because of the unskillful or careless method
   in which it is employed, or if the material adopted as an explosive
   is unnecessarily powerful, the corporation, or other person, so em-
   ploying such agency will be liable for any damages produced
   thereby.

3. The acquisition by a railway corporation of the right-of-way does not
   carry with it the privilege of throwing stones, or other material,
   by blasting, to a distance of two hundred yards or more on the
   lands of an adjacent proprietor, whereby the family of the latter
   is exposed to danger while engaged in their domestic duties.

4. Where those engaged in the construction or operation of railways
   have been accustomed to give warning of approaching danger,
   and thereby induce the public to act upon the presumption that
   the usual signal will be given, and it is not given, whereby one
   who relied upon it was injured, the latter is entitled to recover
   damages.

5. Where those engaged in the construction of a railway employ a pow-
   erful explosive in blasting—with the effects of which they will be
   presumed to have knowledge—it is their duty to cover the blast,
   or otherwise restrict the effect of the explosion, so as to prevent
   danger to others, and if this be impracticable, they should give
   timely warning of the explosion to all persons who may be in dan-
   ger from it.

CIVIL ACTION, tried at November Term, 1891, of PERSON
Superior Court, *Winston, J.,* presiding.

The action was brought by plaintiff administrator to
recover damages for the killing of his intestate by blasting

in the construction of the railway of the Lynchburg and Durham Railroad Company. The defendants Moorman & Co. were jointly sued with the railroad company.

The testimony in substance was that Moorman & Co. were contractors engaged in the construction of the road-bed of the defendant company; that while blasting in a cut, distant some two hundred yards from the residence of the deceased, they exploded a blast, by which a stone was thrown through the air, and struck and killed intestate, who was engaged in some of his ordinary occupations in the yard close to his dwelling; that the explosive used was "Jutson Powder," which acts in all directions; that the railroad company had acquired the right-of-way for its road-bed from intestate, but it did not embrace the land where the killing occurred. There was some evidence that the defendants had been accustomed to give intestate's family notice of the explosion of a blast, and they offered evidence that such notice was given on this occasion, but there was evidence offered by the plaintiff tending to contradict that fact. The blast was not covered, nor was there any evidence that other means were taken to lessen the damages from it.

There was a verdict for plaintiff as to Moorman & Co. only, and from the judgment thereon they appealed.

*Mr. J. Parker*, for plaintiff.
*Messrs. J. W. Graham, W. A. Guthrie* and *V. S. Bryant*, for defendant.

AVERY, J.: The defendant does not contend that any specific view of the law, arising out of the testimony, could not be presented to the jury through the medium of pertinent instructions upon the issue submitted. This being the test of the question whether the Judge below kept within the bounds of his discretionary power when he refused to add the issue suggested, the first exception is manifestly not well founded.

*McAdoo* v. *Railroad,* 105 N. C., 151; *Emry* v. *Railroad Co.,* 102 N. C., 209; *Meredith* v. *Coal and Iron Co.,* 99 N. C., 576; *Boyer* v. *Teague,* 106 N. C , 633.   This Court has, moreover, repeatedly held that in cases like that at bar it is not an error to submit a single issue involving the question whether the injury was caused by the defendant's negligence with an inquiry as to damages, though it has been suggested that by modifying that and adding one, and in some cases two others, a jury might be made to comprehend their duty more clearly. *Scott* v. *Railroad,* 96 N. C., 428; *McAdoo's case, supra; Denmark* v. *Railroad,* 107 N. C., 185; *Braswell* v. *Johnston,* 108 N. C., 150; *Bottoms* v. *Railroad,* 109 N. C., 72.

Excavating by blasting is one of the approved methods of constructing a railway, and the prudent use of such an agency in removing hard material is always deemed to have been in contemplation when the damage was assessed for the right-of-way, as a necessary incident to the privilege. But where damage is done to the land of the owner adjacent to that within the condemned boundary, if it result from managing or handling explosive material carelessly or unskillfully, or from the unnecessary use of such as is so powerful that the injury might be expected to follow as a natural or probable consequence, the corporation is answerable in a new action.   1 Wood Railroad Law, 634, and note; *Sabine* v. *Railroad,* 25 Vt., 363; *St. Peter* v. *Denison,* 58 N. Y., 416; *Bellinger* v. *Railroad,* 23 N. Y., 47; *Losse* v. *Buchanan,* 51 N. Y., 476; *Heeg* v. *Licht,* 80 N. Y., 579; *Railroad* v. *Eagles,* 9 Cal., 544; *Hunter* v. *Farmer,* 127 Mass., 481; *Dodge* v. *Commissioners,* 5 Met., 380; 2 Shearman & Red., sec. 717.   Where there is testimony tending to show that injuries done to the adjacent land, or the buildings on it, were due to the use of unsafe or unnecessarily violent explosive material, or were caused by the careless management of the materials in common use, and also contradictory evidence, it is for the jury to find the facts upon which the question of negligence

depends. Where a human being is killed or injured at his dwelling on his own land by a blast on the right-of-way, condemned out of the same tract, in addition to passing upon the questions whether proper material was used and handled with skill, the testimony may make it material for the jury to determine whether the agents of the corporation had been accustomed to give the injured party a signal before igniting the powder, and, if so, whether such notice was given before the explosion which caused the injury. *Hinkle* v. *Railroad,* 109 N. C., 473; 2 Wood's R. R. Law, p. 1313, and note 3; *Sweeney* v. *Railroad,* 10 Allen (Mass.), 368; *Newsome* v. *Railroad,* 29 N. Y., 383; *Spencer* v. *Railroad,* 29 Iowa, 55; *Langon* v. *Railroad,* 3 Am. and Eng. Railroad Cases, 355. Where a corporation, by habitually giving some warning of approaching danger, whether from passing trains or expected explosions, induces the public to act upon the idea that the usual signal will be given at the accustomed time, the failure to meet this just and natural expectation, which has arisen from observation of the custom of the company's agents, will subject the corporation to liability for an injury inflicted on one who puts himself in danger because he is misled by such omission. *Hinkle* v. *Railroad, supra;* 2 Wood's R. R. Law, *supra.* Indeed, the decision of the Court of Appeals of New York imposed upon the corporation, in cases like that at bar, the duty of either adopting some means for preventing projectiles from being thrown so as to subject a person to danger in his own house or yard, or of giving him personal and timely notice so that he may escape. *St. Peter* v. *Denison, supra.* The application of the principle that we have stated to the facts of this case, will enable us without difficulty to dispose of most of the exceptions relied on and set out in the formal assignment of error.

We do not think that the privilege of throwing stones through the air two hundred or more yards and beyond the right-of-way, so as to endanger the lives of the owners of

adjacent land and of the members of their families, when engaged in their domestic duties in and around their dwelling-house, passes with the right-of-way as a necessary incident to the easement. " In determining what is the duty, the failure in which constitutes negligence, regard is to be had to the growth of science and the improvements in the arts which take place from generation to generation, and many acts or omissions are now evidence of carelessness which a few years ago would not have been culpable at all, as many acts are now consistent with great care and skill which in a few years will be considered the height of imprudence." 1 Shearman & R., sec. 12. The Supreme Court of Michigan held, where one was passing along a public road and was injured by a blast in a mine on land adjacent to the road, it was negligence in the owner not to cover the mine so as to protect travelers from missiles thrown up by the explosive material. *Beauchamp* v. *Mining Co.*, 50 Mich., 163. The defendants introduced as a witness an acknowledged expert (one Gleves), who was a civil engineer. He testified that on ordinary railroad work in the country, and remote from dwellings, it was not customary to cover blasts, but when blasting was done near a city or a dwelling-house, that a covering could be made of green hides or timber so as to break the force of the projectiles or prevent their going so far as to subject persons passing along the streets or in their own yards or houses to danger. There was evidence tending to show that stones had been thrown into the intestate's yard by previous blasts at the same place, and that the plaintiff, his wife, having received warning, had been compelled to gather her children to the house to get them out of danger. If the defendant or his employees did not know that the missiles had been thrown to such a distance, they ought, in the exercise of ordinary care, to have known it if they were subjecting the intestate and his family to danger, and to have taken proper precaution to guard against it. Indeed,

their own testimony tended to show such knowledge, since some of defendant's witnesses testified to having given, or heard warning given by others, to intestate's family, by calling out " Fire."  At any rate, persons using such an inflammable and powerful instrumentality are charged with knowledge of any fact in reference to its actual effect, that they could by reasonable diligence have ascertained.  Knowing, then, that previous blasts had endangered the persons of intestate, his wife and children, if the explosion occurred in a shaft or in a deep cut, so situated that covering could be easily constructed out of timbers or hides, so as to protect intestate against the danger, it was the duty of the defendant to have provided such structure.  If it was not practicable at any cost, reasonably commensurate with the nature of the work, to prevent the projectiles from being thrown into intestate's yard, then it was incumbent on defendant to see that intestate and his family had actual and timely notice of impending danger before igniting the fuse.  The Supreme Court of Massachusetts held that where a contractor (like Moorman & Co. in this case) caused stones to be thrown, by blasting, upon a building in process of construction, he was liable to respond in damages not only for the injury done to the building by the falling stones, but for loss of time of the workman in putting it up, when, in consequence of actual notice, they went into a place of safety till the danger was over.  *Hunter* v. *Farmer, supra.*

We concur with the Judge below in the opinion that if the defendant contractor, or his agent in charge of the work, knew, or could by reasonable diligence have known, that the stones thrown out by his blasts had been falling on or around the dwelling of intestate, so as to imperil the safety of the family engaged in their ordinary household work, it was his duty to have protected them by constructing a covering, if his work was in such a depression, that he could erect barriers at reasonable cost, and thereby obviate the

danger. But if the costs of such coverings would have been so great as to consume all or more than all of the profit he would otherwise have derived from performing his work under the contract, we think that in any event he could not escape the duty devolving upon him so soon as he had knowledge, or ought to have known of the danger, of giving actual warning to those who were in peril. When it was shown that the family of the intestate were exposed to such danger from the blast, and that defendants, in the exercise of reasonable diligence, ought to have known that fact, it was incumbent on them, if they would relieve themselves from responsibility, to show that they had provided the covering, or given the warning, or that the negligent conduct of plaintiff's intestate was the proximate cause of the injury.

As the Judge below left the liability of the defendant dependent upon actual knowledge of the danger, before the duty of constructing a covering or giving warning would arise, the defendant has no reason to complain of the legal propositions laid down by him. Nor can he assign as error the fact that the Judge embodied in his charge, as an abstract proposition, what is known as the "rule of the prudent man," in response to and in compliance with a request contained in both clauses, three and nine, of his prayer for instructions, especially when, in specific instructions given afterwards, he correctly applied the law of negligence and contributory negligence to the facts of this case as a guide to the jury in their deliberations. If the plaintiff's intestate had remained in his yard, or at his well, when he was engaged in his ordinary work, instead of going behind the corner of the house, the negligence of the defendant, which, under instruction of the Court, was to be considered as a cause of injury only on condition of his failure to erect a covering, if practicable, or, at all events, to give warning of the danger, would have been the proximate cause of the injury. The jury were instructed in effect that they should

respond No to the issue involving defendant's negligence unless they found he had failed in his duty as to erecting a covering or giving warning, and if they so responded to that issue, it would be unnecessary to consider the other issues. So that they could not reach the second issue till they had found that "plaintiff's intestate was killed by the wrongful act or negligence of Moorman & Co., evinced in the omission, when it was practicable to do so at reasonable cost, to erect a covering or to give timely notice." There was conflicting evidence as to the giving of actual warning, as the intestate's wife testified that "nobody hallooed at all," while two of the defendant's witnessess testified as to notice. Contradictory statements, if made by her, went to the jury as bearing upon her credibility, of which they were the sole judges. After finding that the defendant was in fault in not giving timely notice, or failing to construct a covering, the intestate would not be culpable if he remained in the open yard without warning. So we fail to see how, after passing upon the first issue, it was material to consider whether the intestate took refuge behind the house or not. But the jury evidently reached the conclusion that he did, and that it was a safe place. We do not think that intestate was bound to find an absolutely safe place. He, at most, was expected, in the hurry of the moment, and when in peril, brought about by defendant's negligence, to have made an effort to protect himself, and, like a passenger who errs in judgment in seeking safety in case of derailment of a train, he was not culpable if he made a mistake. 2 Wood Ry. Law, 1141, 1146, notes. If the Judge left questions to the jury that were not properly within their province, the defendant can assign it as error only on condition that he shows that he was thereby injured, and that he cannot do in this case

The rule for determining the amount of damages in which he mentions the net earnings, with health, habits, &c., as factors in making the estimate, was not erroneous, as far as

it went, and there was no such failure to comply with the requests as to furnish ground for complaint.

It was not error to give a summary of the contentions on both sides, nor was it error to mention the fact of killing as the point of departure in enumerating plaintiff's contention, and in giving a summary of the testimony relied on by him. *State* v. *Boyle,* 104 N. C., 800.

Upon a view of all the exceptions relied on, we think that there was no error of which the defendant could justly complain.

No Error.