## EDWARD L. BRITT, Respondent, v. EDWARD CREBO, Appellant.

### Kansas City Court of Appeals, June 16, 1913.

1. **MASTER AND SERVANT: Negligence: Explosives.** The plaintiff sued to recover for personal injuries sustained by an unexpected explosion of dynamite, while in the employ of the defendant. The plaintiff, while working with the defendant's foreman, was ordered by the latter to drill a hole, where a charge of dynamite was supposed to have exploded, the foreman having inspected the hole. While he was drilling out the hole, a remaining charge of dynamite exploded and he was injured. *Held*, that the court erred in not peremptorily instructing the jury to find for the defendant, because the plaintiff failed to sustain the burden of proof.

2. ————: ————: **Reasonable Care.** Ordinary care means care commensurate with the apparent dangers of the situation and the failure of an employer engaged in the prosecution of a highly dangerous business, such as blasting, to adopt and use reasonable safeguards for the protection of his workmen, constitutes a failure to measure up to the standard of reasonable care and an injury sustained by the servant from the breach of such duty is not to be regarded as the result of a natural risk assumed by the servant.

3. ————: ————: **Powerful Explosives.** The persons using a powerful explosive in their business, such as powder, are charged with notice of any fact in reference to its actual effect that they could by reasonable diligence have ascertained.

4. ————: ————: **Natural Risks.** The master does not insure his servant against the consequence of the natural risks of the service but against those of his own negligence and the burden is always on the injured servant to show that such negligence was the cause of his injury.

Appeal from Jackson Circuit Court.—*Hon. Walter A Powell*, Judge.

REVERSED AND REMANDED.

*Rosenberger & Reed* for appellant.

(1) The burden is upon the plaintiff to show that the condition causing the injury was such that a rea-

sonably careful test, that is to say, the test ordinarily employed in the business, would have disclosed it. Howard v. Railroad, 173 Mo. 524; Rowden v. Daniell, 151 Mo. App. 15; Anderson v. Coal & Mining Co., 138 Mo. App. 76; Goode v. Coal & Coke Co., 151 S. W. 508; (2)   The plaintiff was injured by one of the hazards of his employment, the risk of which he assumed. Furber v. Bolt & Nut Co., 185 Mo. 301; Hollingsworth v. Biscuit Co., 114 Mo. App. 20; Knorpp v. Wagner, 195 Mo. 627; Livengood v. Mining Co., 179 Mo. 229; Mathis v. Stock Yards Co., 185 Mo. 434; Chrismer v. Telephone Co., 194 Mo. 189, 208; Blundell v. Manufacturing Co., 189 Mo. 552; Coin v. Lounge Co., 222 Mo. 488. (3)   The danger of injury from unexploded blasts was a constantly recurring risk incident to plaintiff's employment and he assumed the risk of injury therefrom. Livengood v. Mining Co., 179 Mo. 229; Brown v. King, 100 Fed. 561; Administrator v. Lime & Cement Co., 113 Mo. App. 330.   (4)   Plaintiff did not rely upon Wulfert's order to drill out the hole as an assurance of safety.   He relied in part at least upon his own judgment and investigation.   Such being the case defendant cannot be liable in any view of the evidence.   Knorpp v. Wagner, 195 Mo. 637.   (5)   Britt and Wulfert were fellow-servants.   Wulfert was not guilty of any negligence, but in any view of the case Britt and Wulfert were fellow-servants.   Livengood v. Mining Co., 179 Mo. 229; Browne v. King, 100 Fed. 561; Administrator v. Lime & Cement Co., 113 Mo. App. 330.   (6)   In submitting the case to the jury on the theory that Wulfert actually knew that there was dynamite in the hole, there being no evidence to that effect, the instruction is wholly improper.   Kassman v. City of St. Louis, 153 Mo. 293; Rearden v. Railroad, 215 Mo. 105, 138; Heinzle v. Street Ry. 182 Mo. 528, 559; Tetwiler v. Railroad, 242 Mo. 178, 193; Stetzler v. Street Railway, 210 Mo. 704, 714; Henry v. Mining Co., 144 Mo. App. 350.

*Scarritt, Scarritt, Jones & Miller* and *Barclay, Fauntleroy, Cullen & Orthwein* for respondent.

(1) The proof is conclusive that Wulford who ordered plaintiff to perform the dangerous work was a vice principal and the master is responsible for his negligent order and conduct. Bane v. Irwin, 172 Mo. 317; Burkhard v. Rope Co., 217 Mo. 457; English v. Shoe Co., 145 Mo. App. 439-451; Carter v. Baldwin, 107 Mo. App. 217. (2) The danger of injury from an unexploded blast was not a risk incident to the employment, and this is especially true in this case because the danger was produced by the defendant's negligence and plaintiff acted in obedience to the present command of his superior. Bane v. Irwin, 172 Mo. 317; Chambers v. Chester, 172 Mo. 461; McMullin v. Mining Co., 73 Pac. (Wash.) 685; Shannon v. Consolidated Co., 24 Wash. 119, 64 Pac. 169; McMahon v. Mining Co., 1 Am. Neg. Rep. (Wis.) 741; Mining Co. v. Tolbert, 31 So. 518; Harp v. Telephone Co., 80 S. W. 510. (3) Whether or not the defendant was negligent was a question of fact for the determination of the jury. The defendant was bound to exercise the highest degree of ordinary care. The danger to the servant was great, and the greater the danger to the servant the greater should be the care and caution demanded, and it was for the jury to say whether or not the defendant's conduct measured up to the standard established by the law. Knight v. Donnelly, 131 Mo. App. 152; Harp v. Telephone Co., 80 S. W. 510; Angel v. Coal Co., 74 S. W. 714. (4) There was sufficient evidence to support an inference that defendant's foreman knew there was dynamite in the hole; if not the error is harmless and so the Supreme Court has decided when an identical contention was presented. Morgan v. Wabash, 159 Mo. 262-283.

JOHNSON, J.—This is a master and servant case. Defendant was engaged as an independant contractor in the work of straightening the track of the St. Louis, Iron Mountain & Southern Railroad near the town of Leeper and in doing the work found it necessary to do extensive blasting in certain rocky cliffs. Plaintiff was one of the laborers employed by defendant to do the blasting and was injured on April 5, 1910, by the unexpected explosion of dynamite in a drill hole. He alleges that his injury was caused by the negligence of his foreman in ordering him to drill in a hole containing unexploded dynamite. The answer contains pleas of contributory negligence and assumed risk and the allegation that the injury was caused by negligence of a fellow-servant. A trial of the issues resulted in a verdict and judgment for plaintiff and the cause is before us on the appeal of defendant whose principal contention is that his demurrer to plaintiff's evidence should have been sustained.

Plaintiff was forty years old at the time of his injury and had been working for defendant since the preceding fall. He had no previous experience in the handling of high explosives and was the assistant or helper of the foreman of the men engaged in blasting. The foreman, whose name was Wulfert, attended to loading the drill holes and firing the shots. Other workmen drilled the holes. Two holes eight feet apart and eight feet deep were drilled in rock. Wulfert and plaintiff loaded them with light charges of dynamite to form a powder chamber or pocket at the bottom of each hole. The explosion of the first charge which consisted of two sticks of dynamite let down to the bottom of each hole proved inadequate and a second charge consisting of three sticks was put in and fired. This was also found to be insufficient to form the required powder chambers and a third charge of five sticks of dynamite was put in each hole and fired. An electric machine was used to fire the shots and the two

charges were connected by wires in a way to cause them to be fired simultaneously by pressing a button on the machine which was placed at a safe distance from the shots. The sticks of dynamite were eight inches long and almost of the same diameter as the drill hole; consequently the charge of five sticks stood three feet, four inches high in the hole, provided the previous discharges had not created a chamber at the bottom large enough to allow some of them to fall over on their sides. The top stick only was attached to the firing wire. The other sticks were separate and were let down into the hole one by one. A small instrument called an exploder was attached at its top end to the firing wires and its other end was inserted in the top stick of dynamite before that stick was added to the charge. When the electric current was turned on it fired the exploder which, in turn, exploded the top stick of dynamite. As a rule the concussion thus produced set off the whole charge of dynamite. In the instance under consideration the charge in one of the holes exploded but in the other there was either no explosion or only a part of the dynamite exploded. Plaintiff fired the shot and then went down the track five or six hundred feet to get the powder for the final blast. The foreman inspected the holes in plaintiff's absence and found that one was clear and ready for the powder, but the other was choked with rock to a point about three feet below the top. The exploder was gone and the firing wire had been blown out of the hole. These things, together with the presence of new cracks in the rock, caused him to think the whole charge had exploded. In the inspection of holes after the firing of shots he used a bamboo fishing pole which he thrust into the hole for the double purpose of ascertaining if it were clear of obstructions and sufficiently cool for the safe reception of blasting powder. He states that he used the pole in the obstructed hole and found that it would not penetrate deeper than

three feet. On the return of plaintiff with the powder the foreman ordered him and another laborer to drill through the obstruction and they obeyed the order, using a hand drill. The second or third stroke of the drill penetrated to a depth of about seven feet and was followed by an explosion of dynamite that blew out the drill and other missiles. Plaintiff was severely injured.

Both plaintiff and the foreman state they believed that both charges had been fully exploded. The foreman states that he made the usual inspection by probing with a bamboo pole and looking for results of the shot and he is uncontradicted by any substantial evidence. Plaintiff says that he did not see the foreman inspect the hole and make the usual tests but this statement does not tend to contradict the foreman for the reason that plaintiff was not near the hole during the inspection. Plaintiff testified:

"Q. Immediately after the explosion you went to the powder magazine? A. I went and got my powder and came back; we was still further up at the powder box.

"Q. That was still further up the track? A. Yes.

"Q. Six or seven hundred feet away from here? A. Something like that.

"Q. So you wouldn't undertake to tell what Mr. Wulfert was doing while you were away? A. No, sir.

"Q. About how long would it take you after the explosion to go up there and get the powder until you got back to where the hole was? A. Just a few minutes; not long.

"Q. 'It would be six hundred feet there and six hundred feet back; that would be about twelve hundred feet, that's about a quarter of a mile, isn't it? A. Oh, no, I would go over there and back, I guess, in something like five minutes. I never did time myself.

"Q. While you were gone you didn't see, of course, what Mr. Wulfert was doing? A. No, sir."

The workman who was called to assist plaintiff to drill in the hole also said that he did not see the foreman make any inspection or test but admitted that he was not near the holes and was doing other work while plaintiff was away and was not called to the scene until plaintiff had returned with the powder. The burden is on the plaintiff to show that the foreman was negligent either in failing to make any inspection to ascertain whether the charge had exploded or in failing to exercise reasonable care in an inspection actually made. We must assume, in the state of proof we have noted, that an inspection was made both visually and with the pole and we pass to the evidence of plaintiff pertaining to the character of the inspection and the appearances it disclosed.

The foreman testified that the exploder was gone, and the firing wires had been blown out of the hole—results indicating that the dynamite had exploded. Plaintiff on cross-examination testified:

"Q. So, then, when you looked in the hole to see whether the wires were there you must have been looking for the wires that were part of the exploder, didn't you? A. I never looked in the holes for any wire.

"Q. I understood you to say you so testified in St. Louis and that was correct? A. Read that again.

"Q. Was the wire out of both holes when you came up to the holes after the explosion? A. Well, sir, they looked like they was, to me.

"Q. Well, did you examine the holes to see if the wire was out? A. Yes; the wires was laying there on the ground.

"Q. Lying on the ground? A. Just like when they shoot out when they shot. A. That's right.

"Q. So you did testify you looked in the hole to see if the wires were there? A. Yes, sir.

"Q. And you stated that was correct? A. Yes, sir."

"Q. So that when you looked in the hole to see whether the wire was in it, you were not looking for the field wire attached to the battery, but you must have been looking for the wire which was part of the exploder, weren't you? A. Yes, sir.

"Q. And you say you looked in the hole and didn't see it there, but saw it lying on the ground? A. Yes, sir.

"Q. And of course that was the hole that you later drilled in? A. Yes, sir."

The foreman further testified that fresh cracks in the rock at the top pointed to an explosion of dynamite as their cause. Plaintiff corroborated this statement in the following excerpt from his cross-examination:

"Q. When you went back there to drill, Mr. Britt, after the third shot, what was the appearance of the rock around the hole there where you were hurt? A. There was a few rock lying around there where the jerk of the shot had busted it up.

"Q. Broken up the rock around the hole? A. Yes, sir.

"Q. And made more cracks there? A. Yes, sir.

"Q. So there were more cracks around the mouth of that hole than there had been after the first shot? A. Yes, sir.

"Q. And after the second shot? A. Yes, sir."

We agree with counsel for plaintiff that the fellow-servant defense is not sustained by the evidence. The act of the foreman in ordering plaintiff to drill in the obstructed hole was the act of a vice principal and not of a fellow-servant. "It is the act and not the rank of vice principal which determines whether two employees are fellow-servants." [Bane v. Irwin, 172 Mo. 306; Stephens v. Lumber Co., 110 Mo. App. 398.] It may be conceded for argument that in loading and firing the shots the foreman and plaintiff worked together as fellow-servants but it is clear that

in the subsequent inspection of the holes to ascertain whether the charges had exploded the foreman was performing the master's duty towards his servants to provide them a reasonably safe place in which to work, and if the foreman negligently performed that duty, defendant should answer in damages for the injurious consequences to plaintiff of such negligence.

The proper performance of the duty of inspection called for the employment of all reasonable and available tests and means of inspection. Considering the extremely hazardous character of the employment, reasonable care meant the highest degree of care. Ordinary care means care commensurate with the apparent dangers of the situation and the failure of an employer engaged in the prosecution of a highly dangerous business, such as blasting, to adopt and use reasonable safeguards for the protection of his workmen, constitutes a failure to measure up to the standard of reasonable care and an injury sustained by the servant from a breach of such duty is not to be regarded as the result of a natural risk assumed by the servant. [Knight v. Donnelly, 131 Mo. App. 152; Blackwell v. Lynchburg Co., 111 N. C. 151, 16 S. E. 12; Mather v. Rillston, 156 U. S. 391; Smith v. Iron Co., 42 N. J. L. 467.]

As is well said in Blackwell v. Lynchburg, supra: "Persons using a powerful explosive in their business, such as powder, are charged with notice of any fact in reference to its actual effect that they could, by reasonable diligence have ascertained." But the weakness of plaintiff's case lies in the failure of his evidence to support a reasonable inference of negligence in the inspection of the holes after the shot was fired. The evidences of an explosion of the dynamite in the obstructed hole were positive and convincing and the failure of a part of the charge to explode was such an extraordinary occurrence as to be almost past belief and yet, obviously, that is just what occurred. The

noise of the explosion convinced all who heard it that both charges had been fired and the choking of the hole in question with rock, the destruction of the exploder, the violent expulsion of the firing wires and the cracking of the rock around the top of the hole, were facts which seemed to be compatible with no other conclusion than that of an explosion of the entire load of dynamite. Defendant was not an insurer of the safety of plaintiff. His duty, as we have said, was to exercise care commensurate with the apparent demands of the situation, and we do not perceive, nor has plaintiff pointed out, anything that might have been done by an ordinarily careful person in the situation of the foreman that was not done in the present instance. The suggestion that he should have tried to thrust the small end of the pole through the obstruction is hardly worthy of mention. The foreman says that end was too limber for such use and that the hole was completely obstructed. The conceded physical facts support his evidence and leave no room for a reasonable belief that an attempted prodding with the small end would have disclosed the presence of the unexploded dynamite.

Plaintiff's injury appears to have resulted from one of the natural dangers of the employment. It was a common thing for a drill hole to become jammed with rocky debris from a preliminary blast and it was the general custom to drill through such obstructions to open a passage for the insertion of the blasting powder into position. The master does not insure his servant against the consequences of the natural risks of the service but against those of his own negligence and the burden always is on the injured servant to show that such negligence was the cause of his injury. [Coin v. Lounge Co., 222 Mo. 488; Chrismer v. Telephone Co., 194 Mo. 189; Brands v. Car Co., 213 Mo. 698.]

Plaintiff's evidence does not sustain this burden and the learned trial judge erred in not peremptorily instructing the jury to return a verdict for defendant. The judgment is reversed, and the cause remanded. All concur.